UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| WILBERT MALBROUX, JR. | : | DOCKET NO. 11-0421 |
| VS. | : | JUDGE TRIMBLE |
| AMERICAN MEDICAL SYSTEMS INC. and DR. JAMES J. JANCUSKA | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM ORDER

Now before the court is plaintiff's motion to remand [doc. 9]. For the following reasons, that motion is **DENIED**.

### Background

This suit was originally filed on October 12, 2010, in the Fourteenth Judicial District Court, Parish of Calcasieu, State of Louisiana. Doc. 1, att. 3. The complaint alleged that plaintiff Wilbert Malbroux, Jr., appearing *pro se*, "expect[ed] to reclaim [his] zest in life [by] submit[ing himself] to be operated on to install a penile prosthesis that has never operated properly." *Id.* at p. 1. It is alleged that plaintiff made this decision pursuant to the medical advice of Dr. James. J. Jancuska. *Id.*

According to the complaint, while giving medical advice to the plaintiff, Dr. Jancuska

> failed to make patient aware of previous patients with the same medical conditions who has had successful surgeries. Also patient faces daily inadequacies from ongoing illness along with the fact of not being able to perform as a man. Petitioner inquired about other treatments but defendant assured petitioner surgery was the best option.

*Id.* at p. 2.

Petitioner is also seeking relief from AMS American Medical Systems ("AMS"), the alleged manufacturer of the defective penile prosthesis. *Id.* As a result of Dr. Jancuska's alleged malpractice and AMS' alleged defective product, petitioner claims to have suffered:

(1) three (3) long years of not be able to interact with the opposite sex;
(2) physical pain (past, present, and future);
(3) loss of the enjoyment of life;
(4) fear that public knowledge about [his] medical inadequacies are made known.

*Id.* As a result of these alleged injuries, petitioner seeks

> a judgment in favor of petitioner stating that he has corrective surgery by a doctor of his choosing at a place of his choice, along with reasonable damage as determined by this Honorable Court, together with the legal interest thereon from the date of medical review board until paid; and . . . for all just, general and equitable relief as the nature of this case permits.

*Id.* at p. 2-3.

Petitioner is a citizen of the State of Louisiana. Doc. 1, att. 3. Defendant AMS asserts, and plaintiff does not dispute, that it is a corporation organized under the laws of the State of Delaware with its principal place of business in Minnetonka, Minnesota. Doc. 1, p. 4; doc. 1, att. 3, p. 36. Dr. Jancuska is a citizen and resident of the State of Louisiana. Doc. 1, att. 3, p. 1.

Defendant AMS filed a notice of removal with this court on March 16, 2011.[1] Doc. 1. On April 15, 2011, petitioner filed the motion to remand that is now before the court. Doc. 9.

---

[1] Defendant Dr. Jancuska did not join in AMS' notice of removal. In their notice of removal, however, AMA argues that "[b]ecause the Doctor is improperly joined, his consent need not be obtained for removal to federal court." Doc. 1, p. 9 (citing *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir. 1993)). Indeed, it is an accepted rule in the Fifth Circuit that "fraudulently/improperly joined defendant is excepted from the rule of unanimity." *Rico v. Flores*, 481 F.3d 234, 239 (5th Cir. 2007). Thus, if defendant AMS can bear its burden of establishing that Dr. Jancuska was fraudulently/improperly joined, then AMS' removal would be excepted from the usual unanimity requirement that Dr. Jancuska join in removal. *See Bertrand v. Fischer*, No. 09-0076, 2009 WL 5215988, *2-3 (W.D. La. Dec. 29, 2009).

## Law and Analysis

Because federal courts are courts of limited jurisdiction, absent jurisdiction granted by statute, federal courts lack the power to adjudicate most claims. *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). The party seeking to invoke the jurisdiction of a federal court carries the burden of establishing the existence of federal jurisdiction. *Id.* Any doubt as to a district court's jurisdiction will be resolved in favor of remand. *Bosky v. Kroger Tex., L.P.,* 288 F.3d 208, 211 (5th Cir. 2002).

Article 28 U.S.C. § 1441 provides that,

> any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). Federal subject matter jurisdiction is limited to cases that either "aris[e] under the Constitution, laws or treaties of the United States" or involve matters where the amount in controversy exceeds $75,000, exclusive of costs and interest, and diversity of citizenship exists. 28 U.S.C. §§ 1331, 1332. "The defendant may prove [the jurisdictional] amount either by demonstrating that the claims are likely above $75,000 in sum or value, or by setting forth the facts in controversy that support a finding of the requisite amount." *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 882-83 (5th Cir. 2000) (citing *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (other citations omitted)).

Defendants prove that diversity of citizenship exists by "distinctly and affirmatively alleg[ing] the specific citizenship of the parties." *Earl v. Myers*, No. 10-1885, 2010 WL 4875656, *2 (E.D. La. Nov. 23, 2010). "To determine whether diversity jurisdiction exists for removal, the Court considers the state court claims as they existed at the time of removal."

*Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Here, under normal circumstances, because defendant Dr. Jancuska is a citizen of the State of Louisiana, this court would lack the diversity required by 28 U.S.C. § 1332.

   1. *Improper Joinder*

Defendant AMS removed this matter on the basis of diversity, alleging that defendant Dr. Jancuska was improperly joined and should not be considered for purposes of diversity jurisdiction. Doc. 1. Improper joinder of a non-diverse party can be proven by showing "(1) actual fraud in the pleading of jurisdictional facts, or (2) the inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 308 (5th Cir. 2005) (citing *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)). In reviewing a claim for improper joinder, all factual allegations are evaluated in the light most favorable to the plaintiffs, resolving all contested issues of substantive fact in favor of the plaintiffs. *Id.* at 309.

When considering whether a non-diverse defendant has been improperly joined to defeat diversity jurisdiction, courts should "pierce the pleadings" and consider "summary judgment-type evidence such as affidavits and deposition testimony." *Cavallini v. State Farm Mutual Auto Ins. Co.,* 44 F.3d 256, 263 (5th Cir. 1995). In conducting this analysis, the Fifth Circuit instructs us to apply a "standard closer to the Rule 12(b)(6) standard," *McKee v. Kan. City S. Ry. Co.,* 358 F.3d 329, 333-34 (5th Cir. 2004), where plaintiffs are prohibited from "rest[ing] upon the mere allegations or denials of [their] pleadings." *Beck v. Tex. State Bd. of Dental Exam'rs,* 204 F.3d 629, 633 (5th Cir. 2000).

Fraud in the pleadings is not an issue in this case, as petitioner does not dispute that Dr. Jancuska is a Louisiana resident. *Travis v. Irby*, 326 F.3d 633, 647 (5th Cir. 2003). Rather,

defendant AMS seeks to prove improper joinder by showing that plaintiff cannot establish a cause of action against the non-diverse party in state court. In analyzing this issue, we are to determine "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against the in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573. Our courts note that the burden of persuasion on a party asserting improper joinder is a "heavy one." *Kling Realty Co., Inc. v. Chevron USA, Inc.*, 575 F.3d 510, 514 (5th Cir. 2009); *see also B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir. 1981) (the "burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed" heavy); *Scott v. Chevron U.S.A., Inc.*, 824 F.Supp. 613, 614 (N.D. Miss. 1993) (same); 3 MOORE'S FEDERAL PRACTICE § 107.14[2][c] (3d ed. 2010) ("The standard requiring that the removing party show that the plaintiff cannot establish a claim against the allegedly fraudulently joined party . . . is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss.").

AMS asserts that plaintiff's claims against Dr. Jancuska arise out of the Louisiana Medical Malpractice Act ("LMMA"), LA. REV. STAT. ANN. § 40:1299.41, *et seq*. If petitioner's claims do arise out of the LMMA, then they are improper because he did not comply with the LMMA's requirement that all claims first be presented to a medical review panel before suit is filed in court. *See* LA. REV. STAT. ANN. § 40:1299.47(B)(1)(a)(i) ("No action against a health care provider . . . may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this section."); *see also Owens v. Ethicon, Inc.*, No. 10-0190, 2010 WL 3172737 (M.D. La. Aug. 11, 2010) (denying a motion to remand where a party was improperly joined because plaintiffs failed to comply with the

LLMA's administrative review process); *Todd v. Angelloz*, 844 So.2d 316, 318-20 (La. Ct. App. 2003) (holding that a court must sustain an exception of prematurity and dismiss the claim if a malpractice claim against a health care provider covered by the LMMA has been filed in district court without having first been presented to a medical review panel). Plaintiff, on the other hand, contends that because "a professional relationship exists between both defendants that cannot be denied[,] the defendants should not be separated." Doc. 9, pp. 2, 4.

The LLMA applies to all claims "arising from medical malpractice . . . ." LA. REV. STAT. ANN. § 40:1299.47(B)(1)(a)(i). "All other tort liability on the part of a qualified health care provider falls under general tort law." *Dading v. Goodyear Tire & Rubber Co.*, No. 05-0100, 2005 WL 2037450, *2 (E.D. La. July 25, 2005). As explained by the court in *Dading*,

> When construing the LMMA, Louisiana courts have consistently held that because the LMMA's limitations on liability are special legislation in derogation of the rights of tort victims, "the coverage of the Act should be strictly construed" with "any ambiguities in the MMA construed against coverage." . . . Once it is determined that a claim falls within the purview of the LMMA, however, it is subject to the provisions of the LMMA even though alternative theories of liability are possible.

*Id.* (internal citations omitted). In order to determine whether an alleged action is "medical malpractice"[2] and subject to the provisions of the LMMA, the Louisiana Supreme Court has set out a list of factors for courts to consider, including:

(1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill,
(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached,
(3) whether the act or omission involved assessment of the patient's

---
[2] "Malpractice" is defined by LA. REV. STAT. ANN. § 40:1299.41A(8) as follows:
"Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.

|  | condition, |
|---|---|
| (4) | whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform, |
| (5) | whether the injury would have occurred if the patient had not sought treatment; and |
| (6) | whether the tort alleged was intentional. |

*Coleman v. Deno*, 813 So.2d 303, 315-16 (La. 2002); *see also Dading*, 2005 WL 2037450, at *3-7 (applying the *Coleman* factors).

Here, an evaluation of the alleged misconduct in terms of the *Coleman* factors and the interpretation of these factors by Louisiana courts indicates that Mr. Malbroux's claims arise from an alleged instance of medical malpractice on the part of Dr. Jancuska, and clearly fall within the purview of the LMMA.

First, the alleged harm in this case clearly arises from a dereliction of professional skill. Mr. Malbroux's complaint basically argues that Dr. Jancuska had a duty to assess the likelihood of a particular penile implant's effectiveness before recommending that implant as a course of treatment, that Dr. Jancuska breached this duty, and that the erroneous recommendation and conclusions Dr. Jancuska resulted in the petitioner's inability to "perform as a man." Doc. 1, att. 3. This allegation clearly implies "a dereliction of professional skill."

Second, as the effectiveness of a particular penile implant in a particular patient cannot be evaluated based on common knowledge, it appears that expert testimony would be required to establish whether the appropriate standard of care was breached. *Pfiffner v. Correa*, 643 So.2d 1228 (La. 1994).

Third, the plaintiff's entire claim is based upon the inadequacy of an assessment of the patient's condition.

Fourth, the incident occurred in the context of a physician-patient relationship.

Fifth, although plaintiff is in the same situation that he was in before he obtained the

medical advice of Dr. Jancuska – as he is still unable "to perform as a man" – the injury, the instillation of an ineffective penile implant, would not have occurred if the patient had not sought treatment from Dr. Jancuska.

Finally, looking at Mr. Malbroux's allegations and assertions, he does not appear to allege anything beyond negligence against Dr. Jancuska. Assuming that his claims are true, such allegations do not rise to the level of virtual certainty required to support an intentional tort. *See Smith v. Mahfouz*, 489 So.2d 409, 413 (La. App. 3d Cir.), *writ denied*, 494 So.2d 1181 (La. 1986) (according to Louisiana law, a plaintiff alleging an intentional tort must show that the defendant desired the result or realized to a virtual certainty that the result would occur).

Having analyzed Mr. Malbroux's allegations against Dr. Jancuska in terms of the factors set out in *Coleman*, this court finds that his claims fall under the LLMA. Accordingly, due to the plaintiff's failure to complete the mandatory medical malpractice review panel proceeding, plaintiff's claims as to Dr. Jancuska are barred by the LLMA. Dr. Jancuska was improperly joined, and his citizenship will not be considered for the purposes diversity jurisdiction. *Owens*, 2010 WL 3172737, at *2. We find no merit in plaintiff's argument that the defendants should not be separated.

   2. *Statutory Amount*

Plaintiff has alleged past, present, and future injuries and seeks corrective surgery, reasonable damages, and legal interest based upon these injuries. Doc. 1, att. 3, p. 2-3. Plaintiff asserts that because his claims do not exceed the sum or value of $75,000, inclusive of interest and costs, we lack jurisdiction over this action. Specifically, plaintiff argues that "[i]t has yet to be determined if the amount exceeds $75,000 including interest and costs since plaintiff has made formal offers to both defendants specifically (a) $10,000 to AMS (b) $15,000 to Dr.

Jacuska to settle actions in original petition." Doc. 9, p. 2.

When a plaintiff does not allege in his state court petition a specific amount of damages, as is the case here, the defendant removing the case must demonstrate by a preponderance of the evidence the value of the plaintiff's claim meets the jurisdictional requirement.[3] *Garcia v. Koch Oil Co.*, 351 F.3d 636, 638–39 (5th Cir. 2003). If the value of the claims is not apparent, then the defendants "may support federal jurisdiction by setting forth the facts – [either] in the removal petition [or] by affidavit – that support a finding of the requisite amount." *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). Once this burden is satisfied, the only way a plaintiff can then effectuate a remand to state court on amount in controversy grounds is to show as a matter of law it is certain his recovery will not reach the jurisdictional minimum for removal. *DeAguilar v. Boeing*, 47 F.3d 1404, 1412 (5th Cir.), *cert. denied*, 516 U.S. 865 (1995).

A plaintiff can show that his claims are actually less than the jurisdictional amount by filing a binding stipulation or affidavit with the petition prior to removal stating he does not seek and will not accept any award in excess of the jurisdictional amount. *Allen,* 63 F.3d at 1335; *DeAguilar,* 47 F.3d at 1412. Such a stipulation will limit the amount in controversy in his case in an unambiguous manner. On the other hand, if the plaintiff does not so stipulate and the amount in controversy is ambiguous at the time of removal, the court may consider a post-removal binding stipulation to clarify the ambiguity by determining the amount which was in controversy as of the date of removal. *Gebbia v. Wal–Mart Stores, Inc.,* 233 F.3d 880, 883 (5th Cir. 2000); *Asociacion Nacional de Pescadores v. Dow Quimica de Colombia S.A.,* 988 F.2d 559, 565 (5th Cir. 1993).

Here, although plaintiff claims to have made non-binding offers to settle, plaintiff did not

---

[3] This amount is calculated "exclusive of interest and costs" – not "including interest and costs" as argued by petitioner. *See* 28 U.S.C. § 1332.

file a binding stipulation or affidavit stating that he does not seek and will not accept any award in excess of the jurisdictional amount. Thus, upon a finding that the defendants have met their burden in showing that that the amount in controversy exceeds $75,000, we must retain jurisdiction over the suit.

Because other courts have already considered appropriate consideration for the injury alleged by plaintiff herein, we need not analyze the issue at length. *See e.g. Giardina v. Mentor Corp.*, No. 97-1559, 1997 WL 346723 (E.D. La. June 20, 1997) (finding that "the potential damages alleged in plaintiff's petition exceed $75,000" where the suit involved "an allegedly failed penile prosthesis and the petition for damages includes past and future medical expenses, pain and suffering, emotional distress, attorney's fees, and exemplary damages"); *see also Woodson v. Surgitek, Inc.*, 57 F.3d 1406 (5th Cir. 1995) (settlement for $85,000.00 for a malpractice claim brought pursuant to a failed penile prosthesis); *Brown v. Herman*, 665 A.2d 504 (Pa. Super. Ct. 1995) (settlement for $250,000 where a penile prosthesis surgery was necessitated); *Bailey v. Emilio C. Chu, M.D., Inc.*, 610 N.E.2d 531 (Ohio Ct. App. 1992) (jury award of $300,000 for an improperly installed a penile implant). Because the injuries alleged in this suit are analogous to those found in other suits all having easily satisfied the jurisdictional amount, we find that the defendant has met its burden and will allow the suit to go forward in federal court.

## Conclusion

We find that Dr. Jancuska was improperly joined and should not be considered for purposes of diversity jurisdiction. We also find that defendant has met its burden to prove by a preponderance of the evidence that the value of the plaintiff's claim meets the jurisdictional requirement. Accordingly, although the court is mindful that removal jurisdiction is strictly

construed, *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100 (1941); *Brown v. Demco, Inc.,* 792 F.2d 478 (5th Cir.1986); *Butler v. Polk,* 592 F.2d 1293 (5th Cir.1979), we find that the matter in controversy exceeds the sum of $75,000.00, and is between citizens of different states. The court therefore must hold that federal subject matter jurisdiction exists. Plaintiff's motion to remand [doc 9] is therefore **DENIED**.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, on May 31, 2011.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE